UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                )
UNITED STATES OF AMERICA        )
                                )
      v.                        )    Cr. No. 17-072 WES
                                )
LEONER LEONARDO,                )
                                )
            Defendant.          )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

      Defendant/Movant Leoner Leonardo has filed a motion to
vacate, set aside, or correct sentence pursuant to 28 U.S.C.
§ 2255, ECF No. 44 ("Mot. to Vacate"), in the above-captioned
matter.  The government has filed a response to the Motion to
Vacate.  ECF No. 49 ("Gov't Resp.").  The Court has determined
that no hearing is necessary.  For the following reasons, the
Motion to Vacate is DENIED and DISMISSED.

I.   Background and Travel

      Leonardo was arrested on July 11, 2017, after law enforcement
officers executed a search warrant at his residence.  Mot. to
Vacate at 2-3.  The warrant was obtained following surveillance of
Leonardo making drug sales to a confidential informant and an
undercover officer.  Id. at 3.  Leonardo was found lying on the
floor in his room with his hands on his head.  Id. at 4. A .25
caliber loaded handgun was located "approximately five feet from

where he was laying on the floor." Id. The police also found heroin on Leonardo's person and elsewhere in the room, and seized approximately $100 from Leonardo. Id. at 3-4, 6.

Leonardo was initially prosecuted by the State of Rhode Island on drug and gun charges and sentenced to a two-year term of imprisonment, of which he served one year. Id. at 2-3. Leonardo was subsequently indicted by federal authorities on narcotics and weapons charges. Id. at 2; Indictment at 1-3, ECF No. 4.

On June 27, 2018, Leonardo pled guilty to conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count I); distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Count II); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count XII); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count XIV). Plea Agrmt. ¶ 1, ECF No. 25; Tr. of June 27, 2018, Change of Plea Hearing at 13-14, 17-18 ("Plea Hr'g. Tr."), ECF No. 48. In exchange for Leonardo's guilty plea, the government agreed to dismiss nine additional distribution charges, Counts III-XI, and two other weapons charges, Counts XIII and XV). Plea Agrmt. ¶ 2; Plea Hr'g. Tr. at 18.

Leonardo was sentenced on March 12, 2019, to one day of incarceration on Counts I, II, and XII, to be served concurrently, and a consecutive term of 60 months imprisonment on Count XIV, followed by three years of supervised release.  Tr. of March 12, 2019, Sentencing Hearing 32 ("Sent. Hr'g. Tr."), ECF No. 43; J. 3-4, ECF No. 35.  A special assessment in the amount of $400 was also imposed.  Sent. Hr'g. Tr. at 33; J. at 8.  Judgment entered on March 20, 2019.  J. at 1.  Leonardo did not appeal.  Mot. to Vacate at 2.

On January 28, 2020,[1] Leonardo timely filed the instant Motion to Vacate.

II.  Law

A.  Section 2255

Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

---

[1] The Motion to Vacate was mailed on January 28, 2020, and is deemed filed on that date.  Houston v. Lack, 487 U.S. 266, 276 (1988)(concluding that pleadings are deemed filed on date prisoner relinquishes control over documents).

3

Generally, the grounds justifying relief under 28 U.S.C.
§ 2255(a) are limited.  A court may grant relief pursuant to § 2255
in instances where the court finds a lack of jurisdiction, a
constitutional error, or a fundamental error of law.  United States
v. Addonizio, 442 U.S. 178, 185 (1979).  "[A]n error of law does
not provide a basis for collateral attack unless the claimed error
constituted a fundamental defect which inherently results in a
complete miscarriage of justice."  Id. (internal quotation marks
omitted).  Moreover, § 2255 is not a substitute for direct appeal.
Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (citing
cases).

B.   Procedural Default

"Where a defendant has procedurally defaulted a claim by
failing to raise it on direct review, the claim may be raised in
habeas only if the defendant can first demonstrate either 'cause'
and actual 'prejudice,' or that he is 'actually innocent'" of the
crimes for which he was convicted.  Bousley v. United States, 523
U.S. 614, 622 (1998)(internal citations omitted); see also Coleman
v. Thompson, 501 U.S. 722, 749-750 (1991); Murray v. Carrier, 477
U.S. 478, 496 (1986).  "Cause" consists of "some objective factor
external to the defense . . . ."  Carrier, 477 U.S. at 488; see
also Coleman, 501 U.S. at 753 (noting that the Carrier Court
"explained clearly that 'cause' under the cause and prejudice test

must be something *external* to the petitioner, something that cannot fairly be attributed to him"). To demonstrate prejudice, the "habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Carrier, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (alteration in original); see also Derman v. United States, 298 F.3d 34, 45 (1st Cir. 2002)("The showing of prejudice needed to cure a procedural default generally requires a habeas petitioner to demonstrate that there is a reasonable probability that the result of the trial would have been different absent the error. The question is not whether the petitioner, *qua* defendant, would more likely have received a different verdict had the error not occurred, but whether he received a fair trial, understood as a trial worthy of confidence, notwithstanding the bevue.") (internal citations and quotation marks omitted). A petitioner must show both cause and prejudice. Derman, 298 F.3d at 45.

The "actual innocence" standard "requires the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995)(citing Carrier, 447 U.S. at 496). To establish the requisite probability, "a petitioner

5

must show that it is more likely than not that no reasonable juror would have convicted him." Id. Moreover, a credible claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. "The standard is 'demanding and permits review only in the "extraordinary" case.'" United States v. Marandola, 372 F. Supp. 3d 7, 11 (D.R.I. 2019) (quoting House v. Bell, 547 U.S. 518, 538 (2006)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. "In cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Id. at 624; see also Marandola, 372 F. Supp. 3d at 11 (quoting Bousley, 523 U.S. at 624). However, "a gateway showing of actual-innocence may be established *despite* the fact that the petitioner entered a guilty plea." Lopez-Correa v. United States, 537 F. Supp. 3d 169, 184 (D.P.R. 2020) (citing Bousley, 523 U.S. at 624), appeal dismissed, No. 20-1965, 2021 WL 4806411 (1st Cir. May 6, 2021).

III. Discussion

Leonardo argues that he is actually innocent of the charge of using a firearm in relation to or in furtherance of a drug

trafficking offense.  Mot. to Vacate at 3; see also 18 U.S.C. § 924(c).[2]  The government contends that Leonardo has procedurally defaulted his claim by failing to raise it during his plea proceedings or on direct appeal.  See Gov't Resp. at 7.  The government further contends that Leonardo cannot overcome his procedural default by showing cause and prejudice for the default or that he is actually innocent of the § 924(c) charge.  Id.

As the government notes, Leonardo does not attempt to argue cause.  Gov't Resp. at 7.  He did not file a reply to the government's Response.  See Docket.  During the plea proceedings, Leonardo did not argue that something "external to the defense,"

---

[2] Section 924(c) provides in relevant part:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(i)     be sentenced to a term of imprisonment of not less than 5 years;

(ii)    if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii)   if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A).

Carrier, 477 U.S. at 488, prevented him from raising the issue of innocence of the 924(c) charge, see generally Plea Hr'g. Tr. Rather, he agreed to the government's recitation of the facts, including that he used the firearm in furtherance of his drug trafficking activities, during his plea hearing, id. at 13-17; see also Plea Agrmt. ¶ 4, and did not raise the "in furtherance of" requirement during his allocution at sentencing, see Sent. Hr'g. Tr. at 23-27.

While in some circumstances ineffective assistance of counsel may constitute cause, see Carrier, 477 U.S. at 488, 492, Leonardo does not allege that his counsel was ineffective, Mot. to Vacate at 7.  On the contrary, he states that "counsel of record, in the wide range of advice, did an objectively professional job.  In fact [counsel] vigorously advocated with the Government and the Court for a lesser sentence."  Id.

To the extent Leonardo attempts to rely on United States v. Marin, 523 F.3d 24 (1st Cir. 2008), to establish cause, any such attempt would fail.  While in some cases the novelty of a claim may constitute cause, see Lassend v. United States, 898 F.3d 115, 122 (1st Cir. 2018) ("A prisoner has cause for procedurally defaulting a constitutional claim where that claim was 'so novel that its legal basis [wa]s not reasonably available to counsel' at the time of the default." (quoting Reed v. Ross, 468 U.S. 1, 16

(1984)) (alteration in original), Marin was decided ten years before Leonardo's June 27, 2018, plea and almost eleven years before his March 12, 2019, sentencing, see 523 F.3d 24; see also Plea Hr'g. Tr. at 1; Sent. Hr'g. Tr. at 1.  Leonardo can hardly argue that a claim based on Marin is novel.

Although the Court need not address prejudice since Leonardo has not demonstrated cause, see Derman, 298 F.3d at 45, the Court notes that Leonardo briefly mentions that he would have gone to trial rather than pleading guilty to the § 924(c) count, Mot. to Vacate at 7 ("[A]though counsel advocated and was successful in obtaining a lesser sentence of his narcotic related offenses, given an opportunity again he would have still entered a plea of guilty to the narcotic related offenses but would have sought a bench trial on the 18 U.S.C. section 924(c) count."  (citing Hill v. Lockhart, 474 U.S. 52 (1985))).  He has, however, provided no support for this assertion.  See Derman, 298 F.3d at 46 ("The burden rests with the petitioner to show that there is a reasonable probability that the jury would have reached a different, more favorable conclusion.").  Accordingly, he has not demonstrated cause and prejudice for his procedural default.

Nor has Leonardo demonstrated actual innocence as a gateway to having a procedurally defaulted claim heard.  See Barreto-Barreto v. United States, 551 F.3d 95, 102 (1st Cir. 2008) ("An

actual innocence claim is 'a gateway through which a habeas
petitioner [may] have his otherwise barred constitutional claim
considered on the merits.'" (quoting Schlup, 513 U.S. at 315))
(alteration in original). First, he has produced no new evidence
in support of his claim of actual innocence. See Schlup, 513 U.S.
at 324. Second, he has argued legal, not factual, innocence, of
the § 924(c) charge. Mot. to Vacate at 7-8 ("The Movant simply
contends that the Government lacked evidence that would have been
necessary to convict him of a violation of 18 U.S.C. section
924(c)."); id. at 5 ("The Government, in charging the Movant,
indicting him for the 924(c) [charge], never gave a sufficient
nexus between the firearm and the drug trafficking crime."); see
also Bousley, 523 U.S. at 623 (stating that actual innocence "means
factual innocence, not mere legal insufficiency"); Barreto-
Barreto, 551 F.3d at 102 ("The petitioners raise a purely legal
argument concerning an issue of statutory interpretation. The
petitioners do not present any new evidence to show their 'factual
innocence.' They have failed, therefore, to present a colorable
claim of actual innocence."). Finally, he has not shown that he
is actually innocent of the other counts to which he pled guilty
and to those dismissed as a result of the plea bargain. See
Bousley, 523 U.S. at 624; Marandola, 372 F. Supp. 3d at 16 ("Mr.
Marandola has not proved that he is actually, factually innocent

of the aggravated identity theft count to which he pleaded guilty, much less the other five identity theft counts which the Government dismissed per the Plea Agreement."). In short, Leonardo has provided no basis to conclude that it is "more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." House, 547 U.S. at 538; see also Marandola, 372 F. Supp. 3d at 16 ("In short, he has not shown that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him, or that his is the kind of extraordinary case warranting review of his procedurally defaulted claim.") (internal citation and quotation marks omitted).

Although actual innocence claims are generally raised as a gateway to overcoming a procedural default of a constitutional claim, see Schlup, 513 U.S. at 315; Barreto-Barreto, 551 F.3d at 102, it appears that Leonardo is raising actual innocence as an independent claim. As Leonardo recognizes, see Mot. to Vacate at 7, however, the Supreme Court "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence," McQuiggan v. Perkins, 569 U.S. 383, 392 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)); see also Herrera, 506 U.S. at 416-17 ("Our federal habeas

cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive."); Lopez-Correa, 537 F. Supp. 3d at 183 ("Relief based on a 'freestanding' actual-innocence claim, without any other constitutional violation, has yet to be decided by the Supreme Court or the First Circuit." (citing McQuiggan, 569 U.S. at 392; Herrera, 506 U.S. at 400; David v. Hall, 318 F.3d 343 (1st Cir. 2003))). The Lopez-Correa court noted, however, that "the doors have been left open." 537 F. Supp. 3d at 183 (citing Dist. Attorney's Office v. Osborne, 557 U.S. 52, 71 (2009) ("Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.")). The court further noted that "[f]reestanding actual-innocence claims are usually accompanied by allegations of procedural or substantive Due Process violations." Id. (citing Osborne, 557 U.S. at 71-74).

In Lopez-Correa, the District of Puerto Rico recently agreed that a petitioner had shown a freestanding claim of actual innocence because she lacked the criminal intent to commit the

crime of which she was accused.  537 F. Supp. 3d at 190.  The court stated that "extraordinary cases call for exceptional and ground-breaking solutions."  Id. at 189; see also id. at 173 (recognizing that its holding was "extraordinary and calls for an exceptional and ground-breaking solution").  The court also noted that the petitioner had provided substantial post-conviction expert testimony that she was incapable of forming the criminal intent needed to convict her.  Id. at 189-90.

This is not an exceptional case.  Assuming Leonardo is raising a stand-alone actual innocence claim, he cannot demonstrate that he is "actually innocent" of the § 924(c) charge.

To obtain a conviction on a § 924(c) charge, the government must prove beyond a reasonable doubt that that the defendant: "(1) committed a drug trafficking crime; (2) knowingly possessed a firearm; and (3) possessed the firearm in furtherance of the drug trafficking crime."  United States v. Ramirez-Frechel, 23 F.4th 69, 74 (1st Cir. 2022); see also Marin, 523 F.3d at 27 (same).  Leonardo does not dispute that he committed a drug trafficking crime or that he knowingly possessed a firearm; rather, he argues that the government cannot, and did not prove, that he possessed the firearm in furtherance of the drug trafficking crime.  Mot. to Vacate at 5-7 (citing Marin, 523 F.3d at 27).  According to Leonardo:

> The fact is that the Government charged the Movant with
> a[] nonexistent offense.  The Government, in charging
> the Movant, indicting him for the 924(c), never gave a
> sufficient nexus between the firearm and the drug
> trafficking crime.  In order to charge a violation of 18
> U.S.C. section 924(c) it must be shown that the firearm
> advances or promotes the drug crime.  Besides the firearm
> being located in the same room as the heroin there was
> no other information or evidence that would be a basis
> for the in furtherance element.

Id. at 5 (internal citation omitted).

In Marin, the First Circuit stated that:

> The "in furtherance of" element does not have a settled,
> inelastic, definition.   In the context of a drug
> trafficking predicate, we have understood "in
> furtherance of" to demand showing a sufficient nexus
> between the firearm and the drug crime such that the
> firearm advances or promotes the drug crime.

523 F.3d at 27 (internal citations omitted); see also United States

v. Gonzalez-Negron, 892 F.3d 485, 487 (1st Cir. 2018) ("To violate

§ 924(c)(1)(A), the defendant must have possessed the gun 'in

furtherance' of his drug dealing, not merely in connection with

his commission of a drug offense, but 'to advance or promote it.'"

(quoting United States v. Gonsalves, 859 F.3d 95, 111 (1st Cir.

2017))).   In assessing whether the requisite nexus has been shown,

the Court looks at both objective and subjective factors.   United

States v. Mendoza-Maisonet, 962 F.3d 1, 15 (1st Cir. 2020).   "The

objective factors include: (1) the proximity of the firearm to

drugs or contraband; (2) whether the firearm was easily accessible;

(3) whether the firearm was loaded; and (4) the surrounding

14

circumstances." Id.; see also Mot. to Vacate at 5-6 (citing Marin, 523 F.3d at 27). "Evidence of subjective intent might include a showing that a defendant obtained a firearm to protect drugs or proceeds, but even if that evidence is lacking, the jury may infer intent from the objective circumstances." Mendoza-Maisonet, 962 F.3d at 15 (internal quotation marks omitted); see also Marin, 523 F.3d at 28. For example, the First Circuit has found a sufficient nexus "where the firearm protects drug stockpiles or the defendant's territory, enforces payment for the drugs, or guards the sales proceeds." United States v. Sherman, 551 F.3d 45, 49-50 (1st Cir. 2008) (internal citations omitted). In addition, "a sufficient nexus is more readily found in cases where the firearm is in plain view and accessible to the defendant." Id. at 50 (quoting United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007) (internal quotation marks omitted).

Leonardo argues that the firearm was located five feet away from him, "on the bed, not on his person." Mot. to Vacate at 6. He concedes that the firearm was accessible, but states that "it should not be discounted that the Movant lived at home with his mother and this was 'his' room, so it would stand to reason he would store the firearm in the only place that was tru[]ly his." Id. Leonardo also concedes that the firearm was loaded. Id. However, "[t]here was no evidence, either in discovery or presented

15

that would show that the firearm was purchased for protecting drugs or drug proceeds." Id.[3] Further, Leonardo avers that the evidence showed that he sold heroin to support his own habit and only had $100 when he was arrested. Id. Lastly, Leonardo notes that "no where in any police report or even alleged by the Government that [he] carried this firearm during any of the narcotic transactions that took place." Id. Leonardo concludes that "[b]esides the firearm being loaded and accessible, no evidence exists that would tend to provide the necessary 'Nexus' between the firearm and the heroin found." Id.

Given Leonardo's statement above, the Court need not address the second and third factors. Accordingly, it turns to the issues of proximity and the surrounding circumstances (and what those circumstances indicate regarding Leonardo's subjective intent) in determining whether he possessed the firearm in furtherance of a drug trafficking crime.

---

[3] During the sentencing hearing, when asked about the gun, Leonardo replied:

> It wasn't even really mine. It wasn't even really a working gun. It was like if you shoot it once, like, the thing -- the slide was all messed up. It wasn't even really -- I was just stupid. I got it trying to be cool, you know what I'm saying, like put it on Snapchat and stuff. Trying really just to impress girls really.

Sent. Hr'g. Tr. at 24.

"The mere presence of a firearm in the area where the drug offense occurred is insufficient to constitute possession in furtherance of a drug trafficking crime." United States v. Bobadilla-Pagan, 747 F.3d 26, 35 (1st Cir. 2014) (internal quotation marks omitted); see also United States v. Grace, 367 F.3d 29, 35 (1st Cir. 2004) (same). However, the First Circuit "has shown considerable latitude in determining whether a firearm was sufficiently proximate to drugs or drug proceeds or accessible to support an 'in furtherance of' conviction." Bobadilla-Pagan, 747 F.3d at 35.

In Marin, on which Leonardo relies, Mot. to Vacate at 5-6, the defendant made a similar argument to Leonardo's:

> Marin argues that the objective evidence consisted only of the presence of the handgun a few feet from an amount of drugs far smaller than what was found in the basement. This, he claims, in combination with the fact that there was no evidence of him carrying the gun while actually engaging in the drug deals, provides no more than mere presence of the firearm, insufficient to support a conviction.

523 F.3d at 27-28 (internal quotation marks omitted).  The First Circuit disagreed:

> But there was much more to the evidence, which, taken in sum, supports a different conclusion. . . . DEA agents discovered a loaded gun in Marin's bedroom where it would be easily accessible to him if surprised in the night. The weapon was found, with a loaded spare clip, under Marin's mattress, in the same room as—and only a few feet from—75 grams of cocaine and a digital scale, and in the same house as an additional 700 grams of cocaine and proceeds from drug sales.  We have little doubt that

17

a jury could have reasonably inferred from this evidence that Marin possessed the firearm to protect his drug trafficking activities.  Moreover, the jury also heard testimony that drug traffickers often possess firearms for protection of their trafficking activities.

Id. at 28. (footnote omitted).[4]  The First Circuit has reached like conclusions in similar cases.  See, e.g., United States v. Perez-Greaux, 454 F. Supp. 3d 128, 138-40 (D.P.R. 2020) (citing cases).

Here, the loaded firearm was located on a bed five feet from Leonardo.  Mot. to Vacate at 6.[5]  Drugs and money were found in the same room as the weapon and/or on Leonardo's person.  Id. at 4-5; Plea Hr'g. Tr. at 15.  In addition, the officers found ammunition cartridges, a box of Glad sandwich bags, a number of which had the corners cut off (indicative of narcotics packaging), and digital scales.  Plea Hr'g. Tr. at 16.  Moreover, although Leonardo claims that the drug sales were to support his own habit, Mot. to Vacate at 6, he made multiple sales to the undercover officer, Plea Agrmt. ¶ 4.  In fact, between June 2, 2017, and July

---

[4] The Marin court also noted that the gun had an obliterated serial number, 523 F.3d at 28, which is also true in the instant case.  The agreed-upon facts, as summarized in the Plea Agreement, ECF No. 25, state that "An F.I.E. Titan .25 caliber semi-automatic pistol with an obliterated serial number was seized from Defendant during the July 11, 2017 search warrant execution."  Plea Agrmt. ¶ 4(c).

[5] During its statement of facts at the change of plea hearing, the government stated that the weapon was found "approximately two feet" from Leonardo, "with the safety lever off and the hammer cocked back and ready to fire."  Plea Hr'g. Tr. at 15.

11, 2017, Leonardo, either alone or with others, made ten such sales to the officer.  Id.; see also Indictment at 1-2.  Thus, the proximity of the weapon to the narcotics and the surrounding circumstances could allow a jury to reasonably conclude that Leonardo possessed the gun in furtherance of the drug trafficking crime.  See United States v. Naranjo-Rosario, 871 F.3d 86, 95 (1st Cir. 2017); see also Grace, 367 F.3d at 35-36 (finding sufficient evidence to support conclusion that firearm was used to advance or promote drug activity and citing cases).[6]

As noted above, the standard for a gateway actual innocence claim is "demanding and permits review only in the 'extraordinary case.'"  House, 547 U.S. at 538.  In Herrera, the Supreme Court stated that the threshold for any hypothetical freestanding actual innocence claim "would necessarily be extraordinarily high."  506 U.S. at 417.  It stands to reason that if Leonardo has not met the standard to overcome a procedural default by way of an actual innocence claim, he has not satisfied the higher standard for a freestanding actual innocence claim.  Accordingly, assuming, arguendo, that Leonardo may bring a freestanding actual innocence claim, Leonardo's claim that he is actually innocent of the firearms charge fails.

---

[6] The Court notes that Leonardo stipulated in the Plea Agreement that he possessed the firearm "in furtherance of his drug trafficking activities."  Plea Agrmt. ¶ 4.

IV.  Conclusion

Based on the foregoing, the Court finds that Leonardo has procedurally defaulted his actual innocence claim.  Further, even if he had not procedurally defaulted the claim, Leonardo's presumed freestanding claim that he is actually innocent of the § 924(c) charge lacks merit.  Accordingly, the Motion to Vacate, ECF No. 44, is DENIED and DISMISSED.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court hereby finds that this case is _not_ appropriate for the issuance of a certificate of appealability (COA) because Leonardo failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Leonardo is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rule 11(a), Rules Governing Section 2255 Proceedings.


IT IS SO ORDERED.

William E. Smith
District Judge
Date: April 6, 2022

20